FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2012 NOV 29  PM 1:20

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

REIDAR CARROLL ARDEN,

        Petitioner,

v.

ANTHONY HAYNES,

        Respondent.

CIVIL ACTION NO.: CV212-061

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Reidar Carroll Arden ("Arden"), an inmate currently incarcerated at the Federal Satellite Low La Tuna in Anthony, New Mexico, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking credit toward his federal sentence for time served in Brazil from August 12, 2002, through December 17, 2004. Respondent[1] filed a Response. (Doc. No. 31). Arden filed a Traverse. (Doc. No. 44). Regarding the merits of Arden's petition, Respondent contends that Arden's writ should be denied because Arden is not entitled to credit for time spent incarcerated in Brazil because that time was credited toward his Brazilian sentence and because that time was taken into consideration by the federal judge who sentenced him. Documents filed by Arden in support of his claim casted doubt on Respondent's argument that all of the time spent incarcerated in Brazil was credited toward his Brazilian sentence. By Order

---

[1] The Respondent in this case is Anthony Haynes, Warden at the Federal Correctional Institution in Jesup, Georgia, the prison where Arden was incarcerated at the time he filed the instant petition.

AO 72A
(Rev. 8/82)

dated September 11, 2012, the Court instructed Respondent to file another response to show cause why Arden's writ should not be granted. (Doc. No. 47). Respondent timely filed a Response.[2] (Doc. No. 48). However, Respondent also filed a Notice to the Court wherein he explained that if given time he could obtain more documents in support of his position. (Doc. No. 49). By Order dated October 15, 2012, the Court explained to Respondent its view of the timeline surrounding Arden's Brazilian charges and imprisonment and Arden's United States charges and imprisonment; this timeline is based in part on the documents submitted in the instant case and in part on the government's sentencing memorandum submitted in Arden's federal criminal case in the Eastern District of Pennsylvania. (Doc. No. 52). In that same Order, the Court gave Respondent fourteen (14) days to advise the Court as to whether he wanted to submit further argument and support for that argument in an effort to refute the potential calculation of credit owed to Arden. (Id.). Respondent filed a Response to the October 15, 2012, Order wherein, instead of advising the Court as to whether he wanted to submit further argument, he reiterated his previous arguments in support of a denial of Arden's petition.[3] (Doc. Nos. 53 and 54). Arden filed two responses to the October 15, 2012, Order. (Doc. Nos. 60 and 63). Arden also filed a second affidavit in support of his petition. (Doc. No. 61). For the reasons which follow, Arden's petition should be **GRANTED** in part.

---

[2] Arden filed a Traverse to this Response. (Doc. No. 58).

[3] In this Response, Respondent does not refute the calculation made by the Office of the United States Attorney for the Eastern District of Pennsylvania, which is explained in more detail below.

## STATEMENT OF THE CASE

On November 1, 1995, a federal grand jury in the United States District Court for the Southern District of California returned a 1-count indictment against Arden. (Doc. No. 1-1, pp. 6–7). That indictment charged Arden with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 371, 1343, and 2. (Id.). The alleged conduct that formed the basis of the indictment occurred between April 1994 and January 1995. (Id.).

On August 13, 1998, a federal grand jury in the United States District Court for the Eastern District of Pennsylvania returned a 13-count indictment against Arden. United States v. Arden, 2009 WL 1971392 (E.D. Pa. 2009). That indictment charged Arden with one count of conspiracy to engage in the interstate transportation of stolen securities valued at $5,000 or more, in violation of 18 U.S.C. § 371; four counts of interstate transportation of stolen securities valued at $5,000 or more, in violation of 18 U.S.C. § 2314; and eight counts of concealment money laundering, in violation of 18 U.S.C. § 1956. Id. The eight counts of money laundering allegedly occurred between March 1993 and June 1994. Id. Other offenses allegedly occurred on May 1, 1994. (Doc. No. 31-1, p. 2).

On August 12, 2002, Arden was detained by Brazilian authorities on charges of violating Brazilian law. (Doc. No. 1-1, pp. 14, 12). On August 20, 2002, the United States Department of Justice Criminal Division Office of Internal Affairs sent a request to the United States Department of State asking the Department of State to send a cable to the United States Embassy in Brazil. (Doc. No. 1-1, pp. 6–7). The Office of Internal Affairs requested that the Department of State ask the Embassy to seek the

3

provisional arrest of Arden for the purpose of extradition to the United States. (Id.). This request for provisional arrest for the purpose of extradition was based on the pending indictment in the Southern District of California. (Id.). On August 22, 2002, the Embassy made such a request. (Doc. No. 1-1, p. 16). On September 10, 2002, the Federal Supreme Court in Brazil decreed the preventive detention requested. (Doc. No. 1-1, p. 8).

The United States' extradition request was approved by Brazil on April 23, 2003. (Doc. No. 1-1, p. 14; Doc. No. 31-2, p. 8). However, because Arden was facing a trial on Brazilian charges, Brazil did not surrender Arden to the United States at that time. (Doc. No. 31-2, p. 8). Arden was detained on the Brazilian charges while awaiting trial. (Id.). On September 8, 2003, Arden was sentenced by the Federal Judge of the 11th District in Brazil to six (6) years of confinement to be fulfilled in semi-open regime for infraction of Brazilian law. (Doc. No. 1-1, p. 12).[4]

An undated Brazilian record, which clearly was written after Arden's September 8, 2003, sentencing, states "[a]t this point, the detention of the foreigner is based solely on the extradition process, and we await its implementation by order of the Federal Supreme Court." (Doc. No. 1-1, p. 14).[5] On November 10, 2004, the Embassy

---

[4] It should be noted that a copy of Arden's Brazilian sentence has not been submitted to the Court. The document cited is a "Certificate of Behavior" that appears to be issued by Prof. Olavo Oliveira II Prison, the last Brazilian prison in which Arden was detained; Arden was detained there from January 22, 2004, to December 17, 2004. The document describes the sentence pursuant to which he was ostensibly detained. Another document submitted by Arden shows that he was transferred to Prof. Olavo Oliveira II Prison for health reasons. (See Doc. No. 58-5, p. 54).

[5] This record might be "the government of Brazil's note No. 170 of November 21, 2003, notifying the Embassy of Mr. ARDEN's imprisonment sentence in Brazil." (Doc. No. 1-1, p. 16).

AO 72A
(Rev. 8/82)

withdrew its request to the government of Brazil for the extradition of Arden.[6] (Doc. No. 1-1, p. 16). On December 15, 2004, the Federal Supreme Court in Brazil issued for Arden a warrant of release. (Doc. No. 1-1, p. 19). Arden was released from his detention at Prof. Olavo Oliveira II Prison on December 17, 2004. (Doc. No. 1-1, pp. 19, 12).

In February 2008, Arden voluntarily returned to the United States. (Doc. No. 1, p. 16). On February 22, 2008, Arden was arrested pursuant to the indictment pending in the Eastern District of Pennsylvania. United States v. Arden, CR298-379, Doc. No. 7. Following a jury trial, on October 28, 2008, Arden was convicted of all 13 counts brought in the 1998 indictment. Id., Doc. No. 69; (See also Doc. No. 31-2, p. 11). Judgment was entered on July 21, 2009, and Arden was sentenced to be imprisoned for a total term of sixty (60) months on each of counts 1 through 5 of the indictment and ninety-six (96) months of each of counts 6 through 13 of the indictment, all terms to be served concurrently for a total term of ninety-six (96) months. (Doc. No. 31-2, pp. 11–12).

Arden filed the instant petition on March 16, 2012. (Doc. No. 1). Arden seeks credit toward his federal sentence for time served in Brazil from August 12, 2002, through December 17, 2004. (Doc. No. 1, p. 16). Respondent contends that Arden's petition should be dismissed because his claim is appropriately brought in a motion pursuant to 28 U.S.C. § 2255 because his claim is really an attack on his sentence. The Court disagrees. According to the decision of the Eleventh Circuit Court of

---

[6] As previously stated, the United States' extradition request was based upon the indictment returned in the Southern District of California. (Doc. No. 1-1, pp. 6–7). On November 12, 2004, the government filed a motion to dismiss the indictment, which was granted the same day. United States v. Arden, CR395-1838 (S.D. Cal.), Doc. Nos. 135 and 136.

Appeals in <u>United States v. Berrio</u>, 428 F. App'x 944 (11th Cir. 2011), Arden's claim is appropriately brought pursuant to § 2241. Respondent also contends that Arden seeks unspecified injunctive and mandamus relief and seeks to set aside unspecified agency decisions under the Administrative Procedures Act, 5 U.S.C. § 500, *et. seq.*, which are requests improperly brought in a § 2241 petition. The Court construes Arden's statements regarding injunctive and mandamus relief and the Administrative Procedures Act as support, albeit improper support, for his request for credit for time served as opposed to separate requests. The Court will disregard Arden's improper legal theories. As a result, only the merits of Arden's request for credit for time served will be addressed. Regarding the merits of Arden's petition, Respondent contends that Arden's petition should be denied because Arden is not entitled to credit for time spent incarcerated in Brazil because that time was credited toward his Brazilian sentence and because that time was taken into consideration by the federal judge who sentenced him.

## DISCUSSION AND CITATION OF AUTHORITY

It is the duty of the United States Attorney General, acting through the Bureau of Prisons ("BOP"), to determine the amount of credit due for the time served by the defendant prior to sentencing. <u>United States v. Alexander</u>, 609 F.3d 1250, 1259 (11th Cir. 2010). The BOP must adhere to the following guidelines when determining the amount of credit due:

> (a) Commencement of a sentence.—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

6

> (b) Credit for prior custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentences commences—
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585.

As previously stated, Arden was incarcerated in Brazil from August 12, 2002, to December 17, 2004. On August 12, 2002, Arden was detained by Brazilian authorities on charges of violating Brazilian law. (Doc. No. 1-1, pp. 14, 12). Arden remained incarcerated on the Brazilian charges while awaiting trial on those charges. (Doc. No. 31-2, p. 8). On September 8, 2003, Arden was sentenced by the Federal Judge of the 11th District in Brazil for infraction of Brazilian law. (Doc. No. 1-1, p. 12). Arden was incarcerated from August 12, 2002, to September 8, 2003, because he was awaiting trial on the Brazilian charges, he was not incarcerated during that time based solely on the United States' extradition request. Therefore, Arden is not entitled to credit against his federal sentence for the time from August 12, 2002, to September 8, 2003.

The documents submitted in this case do not provide a clear picture of Arden's incarceration status between his sentencing on September 8, 2003, and his release from prison on December 17, 2004. It is clear that he was incarcerated during that time, but the precise reason for that incarceration cannot be gleaned from the submitted documents. Specifically, it is not clear that Arden was incarcerated as the result of his Brazilian sentence. The government's sentencing memorandum submitted

7

AO 72A
(Rev. 8/82)

in Arden's federal criminal case in the Eastern District of Pennsylvania, states that a sentence imposed to be served in a semi-open regime means that the individual is released during the day but confined at night. <u>United States v. Arden</u>, CR298-379, Doc. No. 120, p. 19 n.3. During Arden's federal sentencing, his lawyer explained a semi-open regime as follows: "Which basically means that you could be out during the day and you sign-in at night or spend the weekend in special open regime prisons. Those open regime prisons are much different than the prison that Mr. Arden found himself in." (Doc. No. 48-2, p. 3). A document submitted by Arden in his November 13, 2012, Response to the Court's October 15, 2012, Order does not mention any confinement in relation to the Brazilian semi-open regime. (Doc. No. 63-1, p. 3).[7] Therefore, it is not clear that the duration of Arden's Brazilian incarceration was due to his Brazilian sentence.

The government's sentencing memorandum submitted in Arden's federal criminal case in the Eastern District of Pennsylvania, states that only a portion of Arden's six (6) year sentence was to be served in that fashion. <u>United States v. Arden</u>, CR298-379, Doc. No. 120, p. 19 n.3. As previously stated in this Report, a Brazilian document submitted in the instant case states simply that Arden's six (6) year sentence is to be served in a semi-open regime. (Doc. No. 1-1, p. 12). This conflict has not been resolved by documents submitted in the instant case.[8] Therefore, the Court

---

[7] The undersigned located an English translation of the Brazilian Penal Code which indicates that a convict who is sentenced to a semi-open regime is not subject to confinement. <u>See</u> http://www.wipo.int/wipolex/en/text.jsp?file_id=226393#LinkTarget_7552.

[8] It should be noted that the excerpt from the Brazilian Penal Code submitted by Arden provides the guidelines for sentencing. (<u>See</u> Doc. No. 63-1, p. 3). However, a document showing Arden's Brazilian sentence has not been submitted. As a result, Arden's statement that the entirety of his Brazilian sentence was to be served in a semi-open regime cannot be verified.

cannot determine on what date Arden should have been released from a "regular" Brazilian prison and allowed to serve his Brazilian sentence in a semi-open regime. However, there is no doubt that such an arrangement should have come to pass at some point.

The government's sentencing memorandum submitted in Arden's federal criminal case in the Eastern District of Pennsylvania, further states, "[a]ccording to the Brazilian documents, [Arden] served a total of one year, five months, and fourteen days on the Brazilian charges, ending on January 22, 2004." United States v. Arden, CR298-379, Doc. No. 120, p. 19 n.3. "Thus, [Arden] was held solely on the extradition warrant from January 22, 2004, to December 17, 2004, a total of 11 months." Id. No documents filed in the instant case refute the calculation made by the office of the United States Attorney in the Eastern District of Pennsylvania.

Respondent argues that "[t]he extradition detainer was merely the result, not the cause of, Arden's incarceration." (Doc. No. 48, p. 6). This statement is belied by the record in this case. On August 20, 2002, the United States Department of Justice Criminal Division Office of Internal Affairs sent a request to the United States Department of State asking the Department of State to send a cable to the United States Embassy in Brazil. (Doc. No. 1-1, pp. 6–7). The Office of Internal Affairs requested that the Department of State ask the Embassy to seek the provisional arrest of Arden for the purpose of extradition to the United States. (Id.). This request for provisional arrest for the purpose of extradition was based on the pending indictment in the Southern District of California. (Id.). On August 22, 2002, the Embassy made such a request. (Doc. No. 1-1, p. 16). On September 10, 2002, the Federal Supreme Court

9

in Brazil decreed the preventive detention requested. (Doc. No. 1-1, p. 8). An undated Brazilian record, which clearly was written after Arden's September 8, 2003, sentencing, states "[a]t this point, the detention of the foreigner is based solely on the extradition process, and we await its implementation by order of the Federal Supreme Court." (Doc. No. 1-1, p. 14). It is clear from the record in this case that the extradition request was, in part and later solely, the cause of Arden's incarceration.

Respondent also argues that Arden is not entitled to credit because the record of this case and the sentencing transcript in Arden's federal criminal case show that "Arden was under control of Brazilian authorities from 2002 to 2008 for his six-year conviction under Brazilian law."[9] (Doc. No. 48, p. 8). The Court agrees with Respondent that Arden was "under control of Brazilian authorities" for a six (6) year sentence. However, Arden's Brazilian sentence was to be served, at least in part, in a semi-open regime, which is not traditional incarceration. Consequently, although Arden was "under control of Brazilian authorities" for six (6) years, he was not intended to be held in "official detention,"[10] or incarcerated, for the duration of that sentence. Moreover, Arden was not intended to be incarcerated in a traditional prison following be date on which the semi-open portion of his sentence commenced. If Arden was incarcerated after that date, due solely to the United States' extradition request, Arden would be entitled to credit toward his current federal sentence for that period of time. Again, no documents filed in the instant case refute the calculation made by the office

---

[9] Additionally, Respondent later notes that during his federal sentencing "Arden himself later told the Court that he could not leave Brazil due to his conviction and probation there." (Doc. No. 48, p. 10).

[10] Credit is available only for time spent in "official detention." 18 U.S.C. § 3585 (b). "[C]redit for time spent in official detention under § 3585(b) is available only to those defendants who were detained in a penal or correctional facility." Reno v. Koray, 515 U.S. 50, 58 (1995) (internal punctuation and citation omitted).

of the United States Attorney in the Eastern District of Pennsylvania that "[Arden] was held solely on the extradition warrant from January 22, 2004, to December 17, 2004, a total of 11 months." United States v. Arden, CR298-379, Doc. No. 120, p. 19 n.3.

Finally, Respondent argues that Arden is not entitled to credit because Arden's time spent in Brazilian prison has already been credited toward his federal sentence. In support of this assertion Respondent states that the sentencing judge considered Arden's Brazilian incarceration when deciding Arden's federal sentence. "District Courts are not authorized to compute presentence credit at sentencing." Bradley v. Rathman, 2012 WL 3999861 *2 (N.D. Ala. Aug. 20, 2012) (citing United States v. Wilson, 503 U.S. 329, 333–34 (1992)). As previously stated, it is the duty of the United States Attorney General, acting through the Bureau of Prisons ("BOP"), to determine the amount of credit due for the time served by the defendant prior to sentencing. Alexander, 609 F.3d at 1259. Credit for time served is non-discretionary as it "shall be given" when an inmate is entitled to it. 18 U.S.C. § 3585(b). A sentencing judge does not have the authority to grant credit for time served, and a sentencing judge considering prior imprisonment as one of many factors when determining a fair sentence is not equivalent to receiving credit a prisoner is owed.[11]

Arden is entitled to credit from January 22, 2004, to December 17, 2004, the time during which it is undisputed that he was incarcerated in Brazilian prison due solely to the extradition warrant.

---

[11] Additionally, documents submitted by Respondent show that Arden was given credit toward his federal sentence only from February 22, 2008, through July 20, 2009. (Doc. No. 31-1, p. 3; Doc. No. 31-2, p. 22).

11

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Arden's § 2241 petition be **GRANTED** in part and **DENIED** in part. It is my **RECOMMENDATION** that Arden receive credit toward his federal sentence from January 22, 2004, to December 17, 2004, the time during which it is undisputed that he was incarcerated in Brazilian prison due solely to the extradition warrant.

**SO REPORTED** and **RECOMMENDED**, this 29th day of November, 2012.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)

12